McBRIDE, Judge.
On May S, 1952, at about 6 o’clock p. m., a large live oak tree toppled over on plaintiff’s Chevrolet automobile, which plaintiff was driving on Codifer Boulevard between Metairie Road and Homestead Avenue in Jefferson Parish. The tree had been felled on a vacant lot to plaintiff’s right which was being cleared by the employees of M. S. Centanni, erroneously referred to in the petition as Ike Centanni. Plaintiff brought this suit against Centanni and his public liability insurance carrier for $6,722.69, in solido, for physical injuries, medical expenses, and repairs to the automobile. It is alleged that due to the negligence and carelessness on the part of Centanni’s workmen, the tree was allowed to fall in such a way that the top portion extended into Codifer Boulevard striking plaintiff’s automobile.
The joint answer filed by defendants admits the fall of the tree upon the automobile, but negligence on the part of Cen-tanni’s workmen is denied; in the alternative, it is alleged that plaintiff was guilty of contributory negligence which consisted 'of his failure to heed warning signals which had been given by one of Cen-tanni’s employees who was stationed in Codifer Boulevard and who “flagged down” plaintiff’s automobile.
Plaintiff recovered a judgment for $2,222.69 below and defendants have taken this appeal, to which plaintiff has made answer praying that the judgment be increased to $6,722.69.
The workmen engaged in clearing the lot never intended and had no idea that the tree would fall out into the traffic roadway on Codifer Boulevard. They were endeavoring to cause the tree to fall toward Homestead Avenue or in a direction paralleling Codifer Boulevard, and they thought they had taken precau *581 tions sufficient to bring about that result by placing a winch truck at the comer of Homestead Avenue with a line leading to the trunk of the tree so that as the tree fell the winch would pull the line and the tree toward the truck. The assistance of a bulldozer was also called upon and placed at the base of the tree so that it would be pushed in the direction the workmen desired to have the tree fall. Something unexplained went amiss and the tree fell out into Codifer Boulevard and upon plaintiff’s automobile. One witness said the upper branches covered plaintiff’s car “like a tent.” Plaintiff was trapped in the automobile and parts of the tree had to be cut away to free him.
Under these circumstances, it cannot be doubted that Centanni’s agents and servants were guilty of negligence. They well knew that if the tree was caused to fall toward Codifer Boulevard, such would endanger both pedestrians and traffic traveling thereon, hence their attempt to fell the tree in a direction toward Homestead Avenue.
We do not believe that Varnall, who ran in the direction of plaintiff’s automobile waving his arms as the tree started its fall, had been stationed on the sidewalk for the purpose of giving warning to persons or traffic on Codifer Boulevard. We are convinced from the evidence that Var-nall, who had been one of the workmen on the lot, only ran toward plaintiff’s automobile in an attempt to give warning when it appeared imminent to him that the fall of the tree would be toward Codifer Boulevard rather than toward Homestead Avenue. Varnall said he was sent into the street to “block” traffic, but we simply cannot accept this statement as being the truth.
The serious question in the case is whether it can be said that Snodgrass, the plaintiff, was guilty of contributory negligence as charged by defendants.
Snodgrass had been driving on Metairie Road in a direction away from New Orleans, and upon reaching Codifer Boulevard made a right-hand turn and then traveled in a direction which genérally can be said to be toward the lake. Codi-fer Boulevard at the point of the accident possesses two characteristics which it would be well to mention here. Codifer Boulevard does not run at right angles to Metairie Road but slants off at a lesser angle so that one turning from Metairie Road is not called upon to execute a 90° turn but enters Codifer Boulevard on a 45° angle. It is manifest that the effect of this is that as soon as a motorist traveling on Metairie Road, as was plaintiff, enters Codifer Boulevard he has a much better view of the right side of Codifer Boulevard than if Codifer Boulevard had to be entered on a 90° turn. The other characteristic is that the block between Metairie Road and Homestead Avenue is not the conventional block of 300 feet but is shorter and measures about 175 feet.
The location of the tree according to Snodgrass was 100 feet from Metairie Road and 50 to 75 feet from Homestead Avenue and the tree was located from 75 to 100 feet away from Codifer Boulevard.
Snodgrass when questioned whether there was other traffic at the time of the accident stated that no automobiles were immediately ahead of him but that he did recall that there had been some cars in front of him at or near the intersection of Homestead Avenue which he noticed as he made the turn from Metairie Road into Codifer Boulevard. The automobiles referred to by Snodgrass were undoubtedly driven by John W. Armbruster and George J. Fischer, both of whom appeared at the trial as plaintiff’s witnesses. Armbruster testified that the tree began to fall when he was just about even or a short distance from it. His testimony reads:
“Q. You say that you noticed the tree coming toward you? You mean the tree was falling? A. Falling over toward the street. Yes, towards the automobile.
“Q. Falling toward the automobile? A. Right.
*582 “Q. Now, when you saw that tree falling toward the automobile, that was toward your car? A. Right.
******
“Q. When you were just about even or just past it, you saw the tree in the act of falling at that time? A. Yes, because I put my car in second and got out from under.
“Q. What did you do then? A. Put it in second and got out from under.
“Q. Gave it plenty gas? A. As much as it would take.
“Q. You wanted to go as far as you could? A. Right.”
Fischer also had to drive in haste to escape the falling tree. He testified:
“Q. First, Mr. Fischer, locate the lot on which the tree stood. A. It was on the right-hand side and just as I was even with the tree, I noticed the bulldozer against the tree and I looked forward to see where I was going.
“I was going at a slow rate of speed and a man across the street run off the sidewalk and waves to me not to come through but I was even with the tree. There was nothing I could do or back up or stop; so, I stepped on the gas and went forward.
******
“A. After I passed the tree. After I got out of the way from underneath the tree, I looked through the rear-view mirror to see what the man was waving about.
I had presence of mind something was happening if he told me not to come through. I stepped on the gas and got out and the tree fell in back of me.”
Thus, it will be seen that the tree began its fall just as Armbruster and Fischer, who Snodgrass said were some distance ahead of him, drove.past the place where the accident happened. It is perfectly plain from the testimony of Armbruster and Fischer that to escape the danger created by the falling tree they had to rapidly accelerate the speed of their automobiles, and thus if Armbruster and Fischer were not immediately ahead of Snodgrass but were some distance in front of him, then it stands to reason that Snodgrass was a considerable distance away from the locus in quo when the tree started to topple into Codifer Boulevard.
In passing on the plea of contributory negligence, our concern is whether Snod-grass saw the tree starting to fall and if he did, was there sufficient time for him to stop his automobile and avoid the accident.
Snodgrass stated that when his car was on Metairie Road its speed was probably 30 miles per hour which was reduced to about 20 to 25 miles per hour on approaching Cod-ifer Boulevard, and that he maintained that rate of speed in the area of the tree.
As to when Snodgrass first saw that the tree would fall is a proposition which appears to be thoroughly answered by his own statements. He testified:
“* * * After j made the turn into Codifer and saw the tree, I was aware of the activity then. I was looking straight ahead down Metairie Road, hut as soon as I made the turn, I saw the tree and this Negro workman on my right and he was waving and he was running towards my car but he was not in Codifer. He was in the lot.”
When asked:
“I think you turned and you saw this tree falling? You were telling way back about what went through your mind. Again, what went through your mind when you saw that?”
His answer to this pertinent question was:
“I say I had made the turn. I had committed myself. I had made my decision. I was going home. I was looking straight ahead on Metairie Road. There is no traffic light. No cars to my immediate front. Nothing to interfere.
*583 “I made the turn. I was on Codifer. I had committed myself. There was a sidewalk over here and a neutral ground over there. I saw the top of the tree moving then.
‘‘‘What went through my mind was what to do. I may have been able to turn left and climbed the neutral ground or turned right and run into something else.
“I may have stopped and taken a chance I wouldn’t have gotten as far as the tree might go. I made the decision to go forward.”
Later in his cross-examination we find that Snodgrass testified:
“Q. When you were then approximately a hundred feet from the tree— I mean the tree insofar as Codifer is concerned, you were going somewhere around twenty miles an hour and that is when the decision presented itself to you? You knowing at that moment that the tree was about to or was falling? A. I don’t know about the hundred feet but essentially what you are saying is right.
“Q. You were going to take a chance? A. That is correct.
“Q. And you lost out on that gamble you took ? A. Right.”
Counsel for plaintiff points to certain of Snodgrass’ testimony which he contends demonstrates what the lower court believed and that is that the plaintiff was in such a position that the only prudent thing he could have done under the circumstances was to endeavor to pass beyond the site of the tree before the tree came down.
The testimony alluded to reads:
“Q. Nevertheless, you made up your mind to go on through and you attempted to go through? A. Because of my position and speed.
“Q. Because of your position and speed ? A. That is correct. In other words, I had decided that I was too far gone to stop.
“Q. You decided that before you even saw the colored man waving? A. No. I saw the colored man and the tree at the same time. I saw the whole activity at the same time, after I was turned where I could see. I saw the whole works at once. Everything happened at once.”
Notwithstanding the testimony on which plaintiff relies, sight cannot be lost of the fact that plaintiff was fully aware of the dangerous potentialities of the situation at the moment he entered Codifer Boulevard. His own words were: “ * * * as soon as I made the turn, I saw the tree and this Negro workman on my right and he was waving and he was running towards my car * * By his own estimation the situs of the accident was 100 feet from Metairie Road, and taking his word for it that he saw the tree and the Negro workman just as he made entry into Codifer Boulevard, we think that Snodgrass had ample time and space in which to bring his car, which was traveling at a reasonable rate of speed, to a complete stop before reaching that part of the roadway upon which the tree fell. By continuing forward under the circumstances he was imprudent. We do not believe there is room in this case to admit the doctrine of sudden emergency or hazard under which a person who is confronted with a peril created by the negligence of another will not be held to the exercise of the same deliberate judgment as he would had he seen the danger in time to take steps to avoid it. Plaintiff knew of the danger and we can think of no reason why he could not have exercised caution and taken immediate steps to avoid having the tree fall upon his automobile. It would seem that the plaintiff in the face of a hazardous situation courted with danger and became the loser.
We fully appreciate that a trial judge who sees and hears the witnesses testify is in a much better position to determine their veracity, and we also appreciate that a factual finding of the trial judge should not be disturbed unless mani *584 fest error appears in the judgment. But sometimes it becomes the duty of an appellate court to reverse the judgment in a case in which only facts are involved, and we believe that this case is one of those. We have carefully read and analyzed the transcription of the testimony and our understanding of its import on the all-important aspect of the case is that plaintiff, who was traveling at what can be said to be a moderate rate of speed, was 100 feet away when he became aware of the falling tree and saw the Negro workman waving to him, and he should have reasonably appreciated the danger which confronted him. In the presence of a known danger the plaintiff voluntarily and unnecessarily exposed himself to it and this constitutes contributory negligence on his part barring his right to a recovery.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that plaintiffs suit be dismissed, plaintiff to pay the costs of both courts.
Reversed.